UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CENGAGE LEARNING, INC.                          :
(f/k/a THOMSON LEARNING, INC.)                  :
PEARSON EDUCATION, INC.                         :
JOHN WILEY & SONS, INC., and                    :          **08 Civ. 03354 (NRB)**
                                                :
                              Plaintiffs,       :          **FIRST AMENDED**
                                                :          **COMPLAINT**
                                                :
                                                :          **TRIAL BY JURY**
              -against-                         :          **DEMANDED**
                                                :
                                                :
EXPRESSTEXT,                                    :
SETTHAPHON PHUMIWASANA, and                     :
TRIPHON PHUMIWASANA,                            :
                                                :
                              Defendants.       :
                                                :
------------------------------------------------------------x

## Introduction

1.     This case arises from the willful violation of three book publishers'

intellectual property rights by an online textbook retail and distribution company and its

principals.  Upon information and belief, ExpressText ("EXPT") (also doing business as

Exptext, or Sttext), Setthaphon Phumiwasana ("Setthaphon") and Triphon Phumiwasana

("Triphon") (collectively, the "defendants"), purchased, imported, distributed and sold,

what they knew to be illegal, pirated (i.e., counterfeit) copies (the "Pirated Books" or

"Pirated Copies"), of the books of Thomson Learning, Inc. ("Thomson[1]"), Pearson

Education, Inc. ("Pearson"), and John Wiley & Sons, Inc. ("Wiley") (collectively,

"plaintiffs" or the "Publishers").

---

[1] On or about August 31, 2007, Thomson Learning, Inc. changed its corporate name to Cengage Learning,
Inc.  At all relevant times herein, Cengage owned all rights, title and interest in the Thomson trademarks

As set forth below, upon information and belief, defendants deliberately sought out, purchased, imported and sold an unknown number of Pirated Copies of plaintiffs' textbooks, bearing plaintiffs' registered and distinctive trademarks, from Asian countries known for their rampant textbook piracy. Defendants then sold or otherwise distributed large quantities of the Pirated Copies through third-party e-commerce websites such as Amazon.com, Half.com and Ebay.com, thus infringing upon plaintiffs' copyright and trademark interests.

## The Parties

1.      Plaintiff Cengage is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902.

2.      Plaintiff Pearson is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at One Lake Street, Upper Saddle River, New Jersey 07458.

3.      Plaintiff Wiley is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at 111 River Street, Hoboken, New Jersey 07030.

4.      Plaintiffs are global leaders in providing all manner of educational books and publications and integrated information solutions to higher education, corporate, government and professional customers.

---

and copyrights detailed herein. All such rights, title and interest in such intellectual property have remained with the same company; only the company's name has changed.

5.      Upon information and belief, defendant EXPT is a business operating in the State of California, with its principal place of business at 4333 W. 190th Street, Torrance, California, 90504.  Upon information and belief, EXPT also operates out of 15378 Mallard Lane, Fontana, California, 92336.  Defendant EXPT solicits internet users to purchase books through third-party websites, and ships books throughout the United States, including the Southern District of New York.

6.      Defendant Setthaphon is an individual who, upon information and belief, resides at 4333 W. 190th Street, Torrance, California, 90504.

7.      Upon Information and belief, Setthaphon is the co-principal of defendant EXPT, and is responsible for ordering, purchasing, importing, distributing and selling defendants' stock, and all decision-making related thereto.

8.      Defendant Triphon is an individual who, upon information and belief, resides at 4333 W. 190th Street, Torrance, California, 90504.

9.      Upon Information and belief, Triphon is the co-principal of defendant EXPT, and is responsible for ordering, purchasing, importing, distributing and selling defendants' stock, and all decision-making related thereto.

### Jurisdiction and Venue

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), 15 U.S.C. § 1121, and under 28 U.S.C. §1332(a), by virtue of the diversity of the parties' citizenship and the value of the matter in controversy exceeding $75,000, exclusive of interests and costs.

11.    This Court has jurisdiction over plaintiffs' claims against defendants in this action further to defendants' intentional transaction of business in this State. As plaintiffs allege herein, defendants contracted to supply goods in New York and offered and sold goods in New York. In so doing, defendants committed tortuous acts outside of New York, which caused injury to plaintiffs in New York. Upon information and belief, defendants also engage in a persistent and regular course of conduct of soliciting business in this State, from which they derive substantial revenue, such that they should reasonably expect consequences to arise out of their actions in New York. Upon information and belief, defendants derive substantial revenue from interstate and international commerce.

12.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) because, upon information and belief, a substantial part of the events giving rise to the claims in this action occurred in the Southern District of New York.

## The Facts

### PLAINTIFFS' DISTINGUISHED REPUTATIONS AND THEIR PUBLICATION OF HIGHER EDUCATION TEXTBOOKS

13.    Cengage is among the world's largest providers of tailored learning solutions. In the academic marketplace, Cengage serves secondary, post-secondary and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments. Cengage products and services are sold throughout the world, through direct channels and via a worldwide network of distributors. Cengage invests significant resources annually in the worldwide advertisement and promotion of its goods and services under all of its marks.

14.    Pearson is a renowned global publisher of educational books in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage.  With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Pearson Education provides quality content, assessment tools, and educational services in all media.

15.    Wiley, which has been in continuous operation for 200 years, is a global publisher of print and electronic products, specializing in scientific, technical, and medical books and journals, professional and consumer books and subscription services, and textbooks and other educational materials for undergraduate, graduate, advanced placement students, educators and lifelong learners.

16.    Plaintiffs' higher education businesses are among their core business operations respectively.

17.    Plaintiffs' higher education businesses use multiple channels of distribution, including retail bookstores, online booksellers, sales to all forms of wholesalers, and direct sales to schools, students and other consumers.

18.    Plaintiffs use their alliances, affiliations and relationships with wholesalers, distributors and all types of retailers as part of their respective overall sales, marketing and distribution plans.  Those plans expand plaintiffs' geographic reach to actual and potential customers, and allow plaintiffs to operate across various mediums and formats.

19.    Plaintiffs invest heavily in their book publishing programs.  Each year they incur substantial costs for author royalties and other costs of content creation and

licensing, copy editing and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of editorial offices.

20.    The revenue from plaintiffs' respective publications represents the majority - in most cases the vast majority - of plaintiffs' respective annual revenues, and is therefore critical to their financial health and continued operation.

21.    Plaintiffs suffer serious financial injury when their copyrights and trademarks are infringed.  A substantial decline in their income could cause plaintiffs to cease publication of one or more deserving books.  This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving works.

22.    Both publishers and authors alike are deprived of income when their books are unlawfully copied, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

## THE BOOK PUBLISHING
## AND ONLINE RETAIL INDUSTRY

23.    In a typical chain of supply within the book publishing/retail industry, wholesalers, distributors and physical and online retailers obtain their stock of books directly from publishers and then sell those books to other book retailers and customers.

24.    Many actual and potential customers of plaintiffs purchase their books from online retailers.  They do so for many reasons. For example, if a customer wishes to purchase a number of titles printed by different publishers, an online retailer would be in a better position to provide that customer with access to books from across the publishing

industry. Moreover, customers who purchase their books online often benefit from faster delivery of stock and simpler ordering processes.

25.     In recognition of the important role that online and other traditional retailers play in the book publishing and retail industries, publishers sell their books to retailers at prices lower than the retail price when they purchase books from the publishers in bulk. Upon information and belief, many legitimate online retailers who sell textbooks in large quantities purchase their stock directly from publishers to take advantage of such pricing discounts, and are then free to mark-up the cost of their products for profit.

26.     Selling books online can be enormously profitable for online retailers. In recent years, as the use of the internet has become more widespread, online purchases by students and other potential customers have increased significantly as consumers have searched for faster and expanded access to books from across the publishing industry, inexpensive prices, faster deliveries, and ordering simplicity.

27.     Given the virtually limitless consumer access that the internet offers to online retailers, it is of crucial importance to publishers and authors that online retailers only sell legitimate textbook products.

**PLAINTIFFS' FEDERALLY REGISTERED
COPYRIGHTS AND TRADEMARKS**

28.     Cengage duly registered its copyright in: 1) *The Practice of Social Research*, by Earl Babbie (11th Edition) (ISBN 0495093254) (Reg. No. TX-6-358-584) on May 25, 2006; 2) *Principles of Information Security*, by Michael E. Whitman and Herbert J. Mattord (2nd Edition) (ISBN 0619216255) (Reg. No. TX-6-584-382) on June

11, 2007; 3) *Home, School & Community Relations: A Guide to Working with Families*, by Carol Gestwicki (4th Edition) (ISBN 0766803562) (Reg. No. TX-5-074-070) on October 19, 1999; 4) *Public Speaking: Concepts and Skills for a Diverse Society*, by Clella Jaffe (5th Edition) (ISBN 0495006564) (Reg. No. TX-6-354-793) on May 2, 2006: 5) *Global Communication*, by Yahya Kamalipour (2nd Edition) (ISBN 049505027X) (Reg. No. TX-6-375-868) on May 25, 2006; 6) *Modern Physics*, by Thornton, (ISBN 0534417817); and 7) *A First Book of Ansi C*, by Gary J. Bronson, (4th Edition) (ISBN 1418835560) (collectively, the "Cengage Authentic Works").

29.    Pearson duly registered its copyright in: 1) *Leadership in Organizations*, by Gary A. Yukl (6th Edition) (ISBN 013494848)(Reg. TX- 6-236-776) on September 2, 2005; 2) *Business Data Networks and Telecommunications*, by Raymond R. Panko (6th Edition) (ISBN 0132214415) (Reg. No. TX-6-415-878) on August 11, 2006; 3) *Teach Reading Creatively: Reading and Writing as Communication*, by Frank May (7th Edition) (ISBN 0131713795); 4) *Art of Learning to Teach: Creating Professional Narratives*, by Mary Beattie (2nd Edition) (ISBN 013174769X); 5) *Development in Adulthood,* by Barbara Hansen Lemme (4th Edition) (ISBN 0205439640); 6) *School and Community Relations*, by Don Bagin, Donald R. Gallagher, and Edward H. Moore (9th Edition) (ISBN 0205509061); 7) *Cases: Strategic Management and Business Policy,* (10th Edition), by J. David Hunge and Thomas L. Wheelen, by Frank May (7th Edition) (ISBN 0131494600); 8) *Social Inequality: Forms, Causes and Consequences*, (6th Edition) by Charles E. Hurst (ISBN 0205484360); and 9) *Modern Electronic Communications*, (8th Edition) by Jeff Beasley and Gary M. Miller, (ISBN 0131130374) (collectively, the "Pearson Authentic Works").

30.     Wiley duly registered its copyright in: 1) *Marketing Research*, by David A. Aaker, V. Kumar and George S. Day (9th Edition) (ISBN 0470050764) (Reg. No. TX-6-569-690) on April 23, 2007; 2) *Managerial Accounting*, by James Jiambalvo (3rd Edition) (ISBN 0470038152) (Reg. No. TX-6-577-722) on May 25, 2007; 3) *Statistics, Principles and Methods,* by Richard A. Johnson, (5th Edition), (ISBN 0471656828) (Reg. No. TX-6-299374) on January 9, 2006; and 4) *Engineering Statistics,* by Montgomery, Runger and Hubele (3rd Edition) (ISBN 0471448540) (Reg. No. TX-5-796-705) on August 26, 2003 (collectively, the "Wiley Authentic Works") (The Publishers' respective original works are collectively referred to as the "Authentic Works").

31.     The Cengage Authentic Works bear the "ITP" and "PWS" trademark designs, which Thomson duly registered with the USPTO under Registration Numbers 1,866,136 and 2183184/ 2,146,913, respectively.  Both the "ITP" and "PWS" designs are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

32.     Cengage's trademarks, as described above, are distinctive and arbitrary. Cengage, formerly known as Thomson Learning, has invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with the above-described marks.

33.     The Pearson Authentic Works bear the "Pearson" word mark, which Pearson PLC, Pearson's ultimate parent company, is the owner of, and Pearson is the exclusive licensee with accompanying right and duty to protect and enforce the rights therein, and which is duly registered on the Principal Register of the USPTO under U.S. Registration Numbers. 2,599,724 / 2,600,081/ 2,652,792 / 2,679,355 / 2,691,830 /

2,694,359, all of which are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

34.    Pearson's trademarks, as described above, are distinctive and arbitrary. Pearson has invested decades of effort in building its reputation of quality educational and literary publishing, which consumers associate with the above-described mark.

35.    The Wiley Authentic Works bear the "Wiley" trademark and service mark, which Wiley has duly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") under U.S. Registration Numbers 1,003,988/2,159,987.  The Wiley Authentic Works also bear the "JW" design, which Wiley has duly registered with the USPTO under Registration Number 2,168,941.  Both the "Wiley" word mark and "JW" design are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

36.    Wiley's trademarks, as described above, are distinctive and arbitrary. Wiley has invested two hundred years of effort in building a reputation of quality in the publishing industry, which consumers associate with the above-described marks.

### DEFENDANTS' SALES OF COUNTERFEIT TEXTBOOKS

37.    On March 19, 2007, Cengage placed an order to EXPT through the Amazon.com e-commerce website for the Thomson Authentic Work, *The Practice of Social Research*, by Earl Babbie (11th Edition) (ISBN 0495093254).  On April 9, 2007, Cengage placed an order to EXPT through the Amazon.com e-commerce website for the Cengage Authentic Work, *Principles of Information Security*, by Michael E. Whitman and Herbert J. Mattord (2nd Edition) (ISBN 0619216255).  On May 9, 2007, Cengage

placed orders to EXPT through the Amazon.com e-commerce website for the following Cengage Authentic Works: 1) *Home, School & Community Relations: A Guide to Working with Families*, by Carol Gestwicki (4th Edition) (ISBN 0766803562); 2) *Public Speaking: Concepts and Skills for a Diverse Society*, by Clella Jaffe (5th Edition) (ISBN 0495006564); and 3) *Global Communication*, by Yahya Kamalipour (2nd Edition) (ISBN 049505027X).

38.    On or around May 9, 2007, March 19, 2007 and April 9, 2007, respectively, EXPT delivered the above titles to Cengage.  Upon Cengage's analysis of the titles, it determined that the delivered books were all Pirated Copies of Cengage's Authentic Works, bearing Cengage's trademarks, and falsely stating that they were legitimately manufactured in the United States.

39.    On December 12 and 13, 2007, Cengage placed an order to EXPT through the Amazon.com e-commerce website for the following Cengage Authentic Works: 1) *Global Communication*, by Yahya R. Kamalipour, (2nd Edition) (ISBN 049505027X); 2) *The Practice of Social Research*, by Earl Babbie (11th Edition) (ISBN 0495093254); 3) *Modern Physics*, by Thornton, (ISBN 0534417817); and 4) *A First Book of Ansi C*, by Gary J. Bronson, (4th Edition) (ISBN 1418835560).

40.    On December 19 and 26, 2007, EXPT delivered the above titles to Cengage.  Upon Cengage's analysis of the titles, it determined that the delivered books were all Pirated Copies of Cengage's Authentic Works, bearing Cengage's trademarks, and falsely stating that they were legitimately manufactured in the United States.  All the above titles delivered on December 19 and 26, 2007 were delivered to Cengage in New York.

41.    On March 30, 2007, Pearson placed an order to EXPT through the Amazon.com e-commerce website for the following Pearson Authentic Works: 1) *Leadership in Organizations*, by Gary A. Yukl (6th Edition) (ISBN 0131494848); and 2) *Business Data Networks and Telecommunications*, by Raymond R. Panko (6th Edition) (ISBN 0132214415).

42.    On April 4, 2007, EXPT delivered the above titles to Pearson.  Upon Pearson's analysis of the titles, it determined that the delivered books were all Pirated Copies of Pearson's Authentic Works, bearing Pearson's trademarks, and falsely stating that they were legitimately manufactured in the United States.

43.    On December 7, 2007, Pearson placed an order to EXPT through the Amazon.com e-commerce website for the following Pearson Authentic Works: 1) *Teach Reading Creatively: Reading and Writing as Communication*, by Frank May (7th Edition) (ISBN 0131713795); 2) *Art of Learning to Teach: Creating Professional Narratives*, by Mary Beattie (2nd Edition) (ISBN 013174769X); 3) *Development in Adulthood*, by Barbara Hansen Lemme (4th Edition) (ISBN 0205439640); and 4) *School and Community Relations*, by Don Bagin, Donald R. Gallagher, and Edward H. Moore (9th Edition) (ISBN 0205509061).

44.    On December 13, 2007, EXPT delivered the above titles to Pearson. Upon Pearson's analysis of the titles, it determined that the delivered books were all Pirated Copies of Pearson's Authentic Works, bearing Pearson's trademarks, and falsely stating that they were legitimately manufactured in the United States.  All the above titles delivered on December 13, 2007 were delivered to Pearson in New York.

45.    On December 10, 2007, before EXPT delivered the above titles to Pearson, defendant Setthaphon contacted Pearson's representative regarding a mistake in the delivery of the shipments. Upon information and belief, defendant Setthaphon made all the decision making with respect to the December 13, 2007 transaction with Pearson, and in connection with the delivery error.

46.    On December 12, 2007, Pearson placed an order to EXPT through the Amazon.com e-commerce website for the following Pearson Authentic Works: 1) *Cases: Strategic Management and Business Policy,* (10th Edition), by J. David Hunge and Thomas L. Wheelen, by Frank May (7th Edition) (ISBN 0131494600); and 2) *Social Inequality: Forms, Causes and Consequences*, (6th Edition) by Charles E. Hurst (ISBN 0205484360). On December 13, 2007, Pearson placed an order to EXPT through the Amazon.com e-commerce website for the Pearson Authentic Work, *Modern Electronic Communications*, (8th Edition) by Jeff Beasley and Gary M. Miller, (ISBN 0131130374).

47.    On or about December 19, 2007, EXPT delivered the above titles to Pearson. Upon Pearson's analysis of the titles, it determined that the delivered books were all Pirated Copies of Pearson's Authentic Works, bearing Pearson's trademarks, and falsely stating that they were legitimately manufactured in the United States. All the above titles delivered on December 13, 2007 were delivered to Pearson in New York.

48.    On April 4, 2007, Wiley placed an order to EXPT through the Amazon.com e-commerce website for the following Wiley Authentic Works: 1) *Marketing Research*, by David A. Aaker, V. Kumar and George S. Day (9th Edition) (ISBN 0470050764); and 2) *Managerial Accounting*, by James Jiambalvo (3rd Edition) (ISBN 0471230030).

49.    On or about April 9, 2007, EXPT delivered the above titles to Wiley. Upon Wiley's analysis of the titles, it determined that the delivered books were all Pirated Copies of Wiley's Authentic Works, bearing Wiley's trademarks, and falsely stating that they were legitimately manufactured in the United States.

50.    On  December 7, 2007, Wiley placed an order with EXPT through the Amazon.com e-commerce website for the following Wiley Authentic Works: 1) *Statistics, Principles and Methods*, by Richard A. Johnson (6th Edition) (ISBN 471656828); and 2) *Engineering Statistics,* by Montgomery, Runger and Hubele (3rd Edition) (ISBN 0471742228).

51.    On December 12, 2007, EXPT delivered the above titles to Wiley.  Upon Wiley's analysis of the titles, it determined that the delivered books were all Pirated Copies of Wiley's Authentic Works, bearing Wiley's trademarks, and falsely stating that they were legitimately manufactured in the United States.  All of the above titles were delivered to Wiley in New York.

52.    Upon information and belief, all of defendants' stock, or at least the vast majority of it, is comprised of pirated books.

53.    Although many of the Pirated Copies sold by EXPT are of inferior quality compared to the Publishers' Authentic Works, most of the Pirated Copies initially appear to be plaintiffs' Authentic Works, such that actual and prospective purchasers, and others who are familiar with Cengage, Pearson and Wiley products, and their trademarks, are likely to believe that the Pirated Copies are plaintiffs' Authentic Works.  This weakens, blurs, and tarnishes plaintiffs' respective trademarks.  It further injures plaintiffs'

business reputations, by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of pirated textbooks.

## DEFENDANTS' WILLFUL INFRINGEMENT OF PLAINTIFFS' COPYRIGHTS AND OTHER INTELLECTUAL PROPERTY RIGHTS

54.    Upon information and belief, defendants purchase Pirated Books from unauthorized suppliers in countries in Asia such as Taiwan, Thailand, Malaysia and Singapore, import them to the United States, and sell them to countless consumers in the United States without the Publishers' authorization, through third party e-commerce websites such as Amazon.com, Half.com and Ebay.com, among others.

55.    Defendants' international use of the internet to effectuate their alleged and infringing activities caused plaintiffs significant and immeasurable harm because pirated copies of their textbooks were exposed to a virtually limitless number of customers.

56.    Upon information and belief, defendants Setthaphon and Triphon directly and personally sought out illegal sources of Pirated Books in a deliberate effort to purchase illegal Pirated Copies of plaintiffs' textbooks, for the purpose of importing, illegally distributing and reselling Pirated Books to consumers in the United States and elsewhere.  Upon information and belief, Setthaphon and Triphon were the moving, active conscious force behind the infringing activity, and both defendants knowingly supervised and participated in such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and had a direct financial interest in, and stood to gain a direct financial benefit from, such deliberate infringing activity.

57.    Upon information and belief, by engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities,

defendants also personally induced, caused, and materially contributed to such infringing conduct.

58.    Upon information and belief, defendants did more than supply the means to facilitate the infringement of plaintiffs' intellectual property rights.  They also substantially participated in, and orchestrated, such infringing activities.

59.    Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would violate plaintiffs' intellectual property rights, including their copyrights and trademark rights in the Publishers' Authentic Works and other works.

60.    Upon information and belief, defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights, which they orchestrated.

61.    Upon information and belief, defendants were fully aware of the illegality of their efforts to purchase, import, distribute and sell Pirated Copies of plaintiffs' Authentic Works.

62.    Upon information and belief, defendants have intentionally and deliberately sold an unknown number of Pirated Copies of plaintiffs' textbooks through third party e-commerce websites.  In so doing, defendants have intentionally deprived plaintiffs and the authors of the Authentic Works of the profits plaintiffs could have obtained from such sales, and have thereby intentionally thwarted and hindered plaintiffs' abilities to sell to customers in the United States.  In so doing, defendants have also knowingly restricted and interfered with plaintiffs' ability to control and exploit their

distribution plans throughout the United States.  In so doing, defendants also have knowingly infringed plaintiffs' valid registered copyrights and trademarks.

63.    Upon information and belief, defendants' actions were willful, malicious and made in bad faith.

### FIRST CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT
(17 U.S.C. §§ 101 *et seq.*)
(Against All Defendants)

64.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 63 of this Complaint.

65.    The Publishers' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they have been duly registered by plaintiffs with the United States Copyright Office and published by plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

66.    At all relevant times, plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in the Publishers' Authentic Works, which have never been assigned, licensed or otherwise transferred to any of defendants, nor have such rights in the Publishers' Authentic Works been dedicated to the public.

67.    Upon information and belief, beginning on an unknown date and continuing through the present, defendants, with knowledge of plaintiffs' respective ownership of the Authentic Works, and with knowledge of plaintiffs' duly registered copyrights in the Authentic Works, have infringed plaintiffs' copyrights by, among other things, deliberately importing, purchasing, distributing, and reselling Pirated Copies of

the Publishers' Authentic Works to the public for profit, without the permission, license or consent of plaintiffs.

68.    Upon information and belief, defendants also have infringed plaintiffs' exclusive rights to reproduce, import, distribute, sell, and to authorize the reproduction, importation, distribution and sale of the copyrighted Authentic Works to the public by sale or other transfer of ownership, by, among other things, importing Pirated Books from Asia, and possibly elsewhere, from manufacturers whose products defendants knew or should have known were unauthorized and illegal, or alternatively, by securing the manufacture of the Pirated Books and by distributing the Pirated Books in the United States, and possibly elsewhere, without the permission, license or consent of plaintiffs.

69.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

70.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

71.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

**SECOND CAUSE OF ACTION**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT**
(17 U.S.C. §§ 101 *et seq.*)
(Against All Defendants)

72.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 71 of this Complaint.

73.    Upon information and belief, in addition to committing the direct acts of infringement alleged herein, defendants, individually and in concert, directly and intentionally sought out an illegal source of Pirated Books, purchased such books with knowledge of their illegal nature and status, and contributed to the direct infringement of plaintiffs' copyrights by illegally distributing and selling the Pirated Books to consumers, to plaintiffs' detriment.

74.    Upon information and belief, defendants supervised such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and each had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberate, malicious and infringing activity.

75.    Upon information and belief, by engaging in the illegal conduct alleged above, and in addition to directly organizing and effectuating such infringing activities, defendants each also induced, caused, and materially contributed to such infringing conduct.

76.    Upon information and belief, defendants did more than supply the means to facilitate and accomplish the infringement of plaintiffs' copyrights, but rather they also substantially participated in, and deliberately orchestrated such infringing activities to plaintiffs' detriment.

77.    Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew

would damage, violate and infringe plaintiffs' copyrights in the Authentic Works and other works.

78.    Upon information and belief, defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights which they so orchestrated.

79.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

80.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

81.    As a result of defendants' unlawful conduct as set forth above, defendants, in addition to their liability for direct infringement of plaintiffs' copyrights, are jointly and severally liable for contributory infringement of plaintiffs' copyrights and other intellectual property rights.

82.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

### THIRD CAUSE OF ACTION
### VICARIOUS COPYRIGHT INFRINGEMENT
(17 U.S.C. §§ 101 *et seq.*)
(Against All Defendants)

83.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 82 of this Complaint.

84.    Upon information and belief, in addition to committing the direct and contributory acts of infringement alleged herein, defendants, individually and in concert, encouraged and facilitated the illegal copying of the Authentic Works in Asia and possibly elsewhere, by purchasing the Pirated Books with knowledge of their counterfeit nature and status, and then importing, illegally distributing and selling such copies to consumers in the United States and elsewhere, to plaintiffs' detriment.

85.    Upon information and belief, defendants facilitated such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and each had a direct financial interest in, and stood to gain a direct financial benefit from, the deliberate, malicious and infringing activity.

86.    Upon information and belief, by engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, defendants each also induced, caused, and materially contributed to such infringing conduct.

87.    Upon information and belief, defendants both did more than supply the means to effectuate the infringement of plaintiffs' copyrights, but rather they also substantially participated in, and stood to benefit financially from, such infringing activities to plaintiffs' detriment.

88.    Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew

would damage, violate and infringe plaintiffs' copyrights in the Authentic Works and other works.

89.    Upon information and belief, in addition to organizing, orchestrating and participating in the alleged infringements of plaintiffs' copyrights, defendants also were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights which they so orchestrated.

90.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

91.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

92.    As a result of defendants' unlawful conduct as set forth above, both defendants, in addition to their liability for direct and contributory infringement of plaintiffs' copyrights, are jointly and severally liable for vicarious infringement of plaintiffs' copyrights and other intellectual property rights.

93.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

**FOURTH CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
**VIOLATION OF IMPORT RIGHT**
(17 U.S.C. § 602)
(Against All Defendants)

94.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 93 of this Complaint.

95.    The Publishers' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and have been duly registered with the United States Copyright Office and respectively published by plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

96.    At all relevant times, plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in the Authentic Works, which have never been assigned, licensed or otherwise transferred to any of defendants, nor have such rights in the Authentic Works been dedicated to the public.

97.    Upon information and belief, on a date to be determined at trial, defendants deliberately sought out what they knew to be sources of Pirated Copies of plaintiffs' merchandise, including such copies of the Authentic Works, with the intention of purchasing the Pirated Copies, importing them into the United States and selling those copies through various mediums, to an unknown number of actual and potential customers in the United States, all without plaintiffs' permission or knowledge.

98.    Upon information and belief, defendants intentionally purchased and imported the Pirated Books into the U.S. for infringing distribution and sale from unauthorized sources which were not licensed manufacturers, distributors or licensees of any of the plaintiffs.  Upon information and belief, defendants knew that the sources of the Pirated Books were not authorized manufacturers, distributors or licensees of plaintiffs.

99.     Upon information and belief, defendants imported Pirated Copies of plaintiffs' Authentic Works, from Asia and possibly elsewhere, into the United States with the intention and purpose of distributing and selling such Pirated Copies in the United States and elsewhere, in violation of plaintiffs' exclusive rights to import and distribute their works pursuant to 17 U.S.C. § 602.

100.    Upon information and belief, from the commencement of their involvement in the book-selling industry, and continuing through to the present, defendants, with knowledge of plaintiffs' respective ownership of the Authentic Works, and with knowledge of plaintiffs' duly registered copyrights in the Authentic Works, have infringed plaintiff's import rights by, among other things, deliberately purchasing, importing, distributing, and reselling the Pirated Books, without the permission, license or consent of the plaintiffs.

101.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

102.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

103.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

**FIFTH CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT**

(15 U.S.C. § 1114)
(Against All Defendants)

104.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 103 of this Complaint.

105.    Cengage is the owner and registrar of the distinctive and arbitrary design marks "ITP" and "PWS," Pearson is the owner and registrar of the distinctive word mark "Pearson," and Wiley is the owner and registrar of the distinctive word mark "Wiley," and arbitrary design mark "JW."

106.    Plaintiffs and defendants compete or intend to compete within the same markets.

107.    Through countless years of use and selective publicity throughout the world, the distinctive trademarks of the plaintiffs have attained secondary meaning in the relevant markets, becoming among the most well-known trademarks in the world. Plaintiffs have established strong reputations and substantial goodwill by reason of the success and reputation of goods sold under their trademarks, immediately indicating to the public that products and services featuring such marks come from, or are sponsored or approved by plaintiffs.

108.    Upon information and belief, defendants have been using, and continue to use, plaintiffs' trademarks in commerce, in connection with their sale and distribution of Pirated Copies of plaintiffs' Authentic Works.

109.    Plaintiffs' trademarks are substantially similar to the counterfeit trademarks used by defendants in connection with the Pirated Books.

110.    By committing the acts alleged herein, defendants intended to, and did, use, and capitalize upon, plaintiffs' distinctive and powerful trademarks in connection with their purchase, use, importation, distribution, sale, and the offering for sale, of the Pirated Copies of plaintiffs' Authentic Works.

111.    Upon information and belief, the circulation of the Pirated Books in interstate and international commerce has caused confusion among plaintiffs' actual and potential customers, affiliates and other professional and individual entities or persons with which plaintiffs share professional relationships and associations.

112.    The circulation of the Pirated Books in interstate and international commerce is highly likely to cause confusion among consumers as to the source of the Pirated Books.

113.    Upon information and belief, defendants have received substantial revenues and substantial profits arising out of the unauthorized use and exploitation of plaintiffs' trademarks to which they are not entitled, and plaintiffs have also suffered damages as a result of defendants' use of plaintiffs' trademarks, for which defendants are responsible.

114.    Defendants' actions constitute an infringement of plaintiffs' respective trademark rights under 15 U.S.C. § 1114.


**SIXTH CAUSE OF ACTION**
**FALSE ADVERTISING/UNFAIR COMPETITION**
(15 U.S.C. § 1125(a))
(Against All Defendants)

115.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 114 of this Complaint.

116.    By using, importing, distributing, offering for sale and selling Pirated Copies of plaintiffs' Authentic Works, defendants have willfully used false designations of origin in commerce in order to cause confusion as to the origin, sponsorship, and/or approval of the Pirated Copies of plaintiffs' Authentic Works.

117.    Plaintiffs' respective trademarks, including the distinctive and arbitrary design marks "ITP" and "PWS," the distinctive word mark "Pearson," and the distinctive word mark "Wiley," and arbitrary design mark "JW," as reflected throughout plaintiffs' respective Authentic Works, are not functional elements of their respective textbooks, but rather are distinctive word marks and arbitrary and fanciful designs, deserving of the strongest protection under the Lanham Act.

118.    Defendants' circulation of the Pirated Books, which falsely designate their source or origin, in interstate and international commerce, has deceived, and is highly likely to continue to deceive, consumers concerning the true source of the Pirated Books.

119.    The circulation of the Pirated Books in interstate and international commerce is highly likely to cause confusion among consumers as to the source of the Pirated Books.

120.    Plaintiffs have suffered irreparable commercial and reputational injury as a result of the false designation of origin of the Pirated Books.

121.    Defendants' acts of infringement have been committed in the Southern District of New York, within the jurisdiction of this Court, and elsewhere.

## SEVENTH CAUSE OF ACTION
## TRADEMARK DILUTION
(15 U.S.C. § 1125(c))
(Against All Defendants)

122.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 121 of this Complaint.

123.    Plaintiffs' respective trademarks, including the distinctive and arbitrary design marks "ITP" and "PWS," the distinctive word mark "Pearson," and the distinctive word mark "Wiley," and arbitrary design mark "JW," as reflected throughout plaintiffs' respective Authentic Works, are not functional elements of their respective textbooks, but rather are distinctive word marks and arbitrary and fanciful designs, deserving of the strongest protection under the Lanham Act.

124.    The plaintiffs' respective trademarks are famous, and they are, and have been for many years, widely recognized by the general consuming public as being associated with the respective Publishers.

125.    By selling the Pirated Books throughout the United States and possibly elsewhere, defendants are using plaintiffs' famous and distinctive trademarks in interstate commerce for a commercial purpose.

126.    Defendants began using the infringing marks well after plaintiffs' marks had become famous.

127.    Defendants are willfully using plaintiffs' trademarks to profit from their reputation and are thereby causing plaintiffs' trademarks to become less distinctive.

128.    Defendants' use of the plaintiffs' trademarks on the Pirated Books tarnishes the reputation of the plaintiffs' respective marks, as they are of a lesser quality

than that which consumers expect from products bearing plaintiffs' respective trademarks.

129.    Defendants' use of the plaintiffs' trademarks lessens plaintiffs' capacity to identify only products authorized by, sponsored by, or somehow affiliated with their respective trademarks.

## EIGHTH CAUSE OF ACTION
## TRAFFICKING IN COUNTERFEIT
## DOCUMENTATION OR LABELS
### (18 U.S.C.S. § 2318)
### (Against All Defendants)

130.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 129 of this Complaint.

131.    Defendants have knowingly and willfully trafficked into the United States counterfeit documentation and labels affixed to literary works in the form of the Pirated Copies.

132.    Upon information and belief, defendants knowingly used the United States mail/postal service or a facility of interstate or foreign commerce to traffic in counterfeit documentation and labels affixed to the Pirated Books.

133.    Upon information and belief, defendants have been using counterfeit labels or counterfeited documentation or packaging, and continue to use counterfeits of plaintiffs' copyrighted label, documentation, and packaging in commerce, in connection with their sale and distribution of counterfeit textbooks, including the Pirated Copies of the Authentic Works.

134.    Plaintiffs' labels, documentation and packaging, which are registered with the United States Copyright Office and the United States Patent and Trademark Office, are substantially similar to the counterfeit labels, documentation and packaging used by defendants in connection with the Pirated Copies, and appear to be genuine, but are not.

135.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their violation of 18 U.S.C.S. § 2318 as alleged above, or statutory damages as provided in 18 U.S.C.S. § 2318.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

## TENTH CAUSE OF ACTION
## ILLEGAL IMPORTATION OF GOODS BEARING INFRINGING UNITED STATES TRADEMARKS OR NAMES
### (15 U.S.C.S. § 1124 and 19 U.S.C.S. § 1526)
### (Against All Defendants)

136.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 135 of this Complaint.

137.    Defendants knowingly imported Pirated Books, of foreign manufacture, of the Authentic Works, which imitate the name of plaintiffs' manufacturer and copy plaintiffs' Authentic Works, including their trademarks, which are registered with the United States Copyright Office and the United States Patent and Trademark Office respectively.

138.    By importing Pirated Copies of plaintiffs' Authentic Works, defendants have willfully used counterfeit trademarks which cause confusion as to the origin,

30

sponsorship, and/or approval of the Pirated Copies, and which are calculated to induce the public to believe that the Pirated Copies were authentically manufactured in the United States.

139.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their violation of 15 U.S.C.S. §§ 1124 and 19 U.S.C.S. § 1526, as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

WHEREFORE, plaintiffs Cengage, Pearson and Wiley demand that judgment be entered against defendants as follows:

(1)    That defendants be required to account for and pay over to plaintiffs all gains, profits, and advantages realized from their unlawful conduct;

(2)    That defendants be required to pay to plaintiffs such damages as plaintiffs have sustained as a consequence of defendants' unlawful acts as alleged above, including actual damages or statutory damages, at plaintiffs' election, pursuant to 17 U.S.C. § 504;

(3)    That defendants be required to pay to plaintiffs such damages as plaintiffs have sustained as a consequence of defendants' unlawful acts as alleged above, including statutory damages or multiple damages in the amount of three times the damages sustained by plaintiffs, pursuant to 15 U.S.C. § 1117;

(4)    That defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or

reproductions, including confusingly similar variations of, plaintiffs' respective marks pursuant to 15 U.S.C. § 1118;

(5)    That defendants be required to pay plaintiffs' actual damages and profits or statutory damages, at plaintiffs' election, pursuant to 18 U.S.C. § 2318;

(6)    That defendants be required to pay exemplary and punitive damages as the Court finds appropriate to deter any future willful and fraudulent conduct;

(7)    That defendants be preliminarily and permanently enjoined from further infringing upon the plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

(8)    That defendants be preliminarily and permanently enjoined from further infringing upon the plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

(9)    That defendants be required to pay profits, damages, costs, and attorney fees in connection with this action;

(10)    That final judgment be entered in favor of plaintiffs and against defendants; and

(11)    That plaintiffs be granted such other and further relief as this Court deems just and proper.

Dated: New York, New York,
        June 27, 2008

COZEN O'CONNOR

By: _____
Aaron Georghiades, Esq. (AG8110)
Attorneys for Plaintiffs
Cengage Learning, Inc. (f/k/a
Thomson Learning, Inc.), Pearson

Education, Inc., and John Wiley &
Sons, Inc.

909 Third Avenue
New York, New York 10022
Phone: (212) 453-3890
Facsimile: (877)526-3076
E-mail:ageorghiades@cozen.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

CENGAGE LEARNING, INC.                              :
(f/k/a THOMSON LEARNING, INC.)                      :            **08 Civ. 03354 (NRB)**
PEARSON EDUCATION, INC.                             :
JOHN WILEY & SONS, INC., and                        :
                                                    :            **AFFIDAVIT OF**
                              Plaintiffs,           :            <u>**SERVICE**</u>
                                                    :
            - against -                             :
                                                    :
EXPRESSTEXT,                                         :
SETTHAPHON PHUMIWASANA, and
TRIPHON PHUMIWASANA,

                              Defendants
------------------------------------------------------------- x


LARISSA KASSIANOS, being duly sworn, deposes and says:

1.      Deponent is not a party to this action, is over 18 years of age and is employed by

Cozen O'Connor, 909 Third Avenue, 17th Floor, New York, New York 10022.

2.      On June 30, 2008, Deponent served the within First Amended Complaint, via

First Class mail, upon:


Erik M. Bashian, Esq.
Codispoti & Mancinelli, LLP
111 John Street, Suite 800
New York, New York 10038-3002

                                                    *Larissa Kassianos*
                                                    ———————————————
                                                    Larissa Kassianos

Sworn to before me on this
the 30th day of June 2008

———————————————
Notary Public

TODD V. LAMB
Notary Public, State of New York
No. 02LA5040678
Qualified in New York County
Commission Expires Mar. 20, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

CENGAGE LEARNING, INC.                              :
(f/k/a THOMSON LEARNING, INC.)                      :
PEARSON EDUCATION, INC.                             :
JOHN WILEY & SONS, INC., and                        :
                                                    :
                              Plaintiffs,           :          **FED. R. CIV. P. 7.1**
                                                    :          **STATEMENT**
            -against-                               :
                                                    :
EXPRESSTEXT,                                         :
SETTHAPHON PHUMIWASANA, and                          :
TRIPHON PHUMIWASANA,                                 :
                                                    :
                              Defendants.           :

-------------------------------------------------------------x

        Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and to enable District Judges
and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the
undersigned counsel for Plaintiff Cengage Learning, Inc. (a private non-governmental party)
certifies that Plaintiff Cengage Learning, Inc. is a not subsidiary of any publicly held corporation
and there is no public company which owns 10% or more of Cengage Learning Inc.'s stock.


Dated: New York, New York
       June 26, 2008

                                        COZEN O'CONNOR


                                        By: _____
                                        Aaron Georghiades, Esq. (AG8110)
                                        Attorneys for Plaintiffs
                                        Cengage Learning, Inc., Pearson Education,
                                        Inc., John Wiley & Sons, Inc., and The
                                        McGraw-Hill Companies
                                        909 Third Avenue
                                        New York, New York 10017
                                        Phone: (212) 453-3890
                                        Facsimile: (877) 526-3076
                                        E-mail:ageorghiades@cozen.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CENGAGE LEARNING, INC.                              :
(f/k/a THOMSON LEARNING, INC.)                      :
PEARSON EDUCATION, INC.                             :
JOHN WILEY & SONS, INC., and                        :
                                                    :
                              Plaintiffs,           :           FED. R. CIV. P. 7.1
                                                    :           STATEMENT
            -against-                               :
                                                    :
EXPRESSTEXT,                                        :
SETTHAPHON PHUMIWASANA, and                         :
TRIPHON PHUMIWASANA,                                :
                                                    :
                              Defendants.           :
------------------------------------------------------------x

        Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and to enable District Judges
and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the
undersigned counsel for Plaintiff, John Wiley & Sons, Inc. (a private non-governmental party)
certifies that Plaintiff John Wiley & Sons, Inc. is a not subsidiary of any publicly held
corporation and there is no public company which owns 10% or more of John Wiley & Sons,
Inc.'s stock.

Dated: New York, New York
        June 26, 2008

                                        COZEN O'CONNOR

                                        By: _____
                                        Aaron Georghiades, Esq. (AG8110)
                                        Attorneys for Plaintiffs
                                        Cengage Learning, Inc., Pearson Education,
                                        Inc., John Wiley & Sons, Inc., and The
                                        McGraw-Hill Companies
                                        909 Third Avenue
                                        New York, New York 10017
                                        Phone: (212) 453-3890
                                        Facsimile: (877) 526-3076
                                        E-mail:ageorghiades@cozen.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

CENGAGE LEARNING, INC.                             :
(f/k/a THOMSON LEARNING, INC.)                     :
PEARSON EDUCATION, INC.                            :
JOHN WILEY & SONS, INC., and                       :
                                                   :
                              Plaintiffs,          :
                                                   :
              -against-                            :
                                                   :
EXPRESSTEXT,                                       :
SETTHAPHON PHUMIWASANA, and                        :
TRIPHON PHUMIWASANA,                               :
                                                   :
                              Defendants.          :

---------------------------------------------------------------x

**FED. R. CIV. P. 7.1
STATEMENT**

        Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and to enable District Judges
and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the
undersigned counsel for <u>Plaintiff Pearson Education, Inc.</u> (a private non-governmental party)
certifies that the following are corporate parents, affiliates and/or subsidiaries of said party,
which are publicly held.

        Plaintiff Pearson Education, Inc is an indirect wholly owned subsidiary of Pearson plc, a
U.K. company which is publicly traded on the London Stock Exchange and which trades
American Depository Shares on the New York Stock Exchange, each representative of one
ordinary share of Pearson plc stock. Pearson Education, Inc. also certifies that it has the
following indirect corporate affiliates that have securities or other interests that are publicly held
and which are traded on the exchanges indicated: Data Broadcasting Corporation (NYSE);
MarketWatch.com, Inc. (Nasdaq); Recoletos Groupo de Comunicacion SA (Stuttgart, Madrid,
Berlin, Munich, Frankfurt and Xerta).

Dated: New York, New York
        June 26, 2008

                                        COZEN O'CONNOR

                                        By: _____
                                        Aaron Georghiades, Esq. (AG8110)
                                        Attorneys for Plaintiffs
                                        Cengage Learning, Inc., Pearson Education, Inc.,
                                        John Wiley & Sons, Inc., and The McGraw-Hill
                                        Companies
                                        909 Third Avenue
                                        New York, New York 10017
                                        Phone: (212) 453-3890
                                        Facsimile: (877) 526-3076
                                        E-mail:ageorghiades@cozen.com